UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PROSHIPLINE, INC. and EP-TEAM, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ASPEN INFRASTRUCTURES, LTD, f/k/a Suzlon Infrastructure, Ltd., et al., <br><br> Defendants. | CASE NO. C07-5660BHS <br><br> ORDER VACATING THE WRIT OF ATTACHMENT ON BEHALF OF EP-TEAM INDIVIDUALLY AND VACATING PRIOR ORDER |

This matter comes before the Court on Defendants' (collectively "Aspen") motion to vacate the reinstated Rule B writ of attachment (Dkt. 137). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby vacates its prior order that reinstated the writ (Dkt. 133).

## I. PROCEDURAL BACKGROUND

On November 27, 2007, Plaintiffs ("Ep-Team" and "ProShipLine") commenced this action against Aspen. Dkt. 1 (verified complaint); *see also* Dkt. 15 (first amended complaint). On April, 25, 2010, ProShipLine appealed the Court's[1] order vacating the writs of attachment previously granted as to both ProShipLine and Ep-Team with respect to Aspen's property. Dkt. 105.

---

[1] This matter was reassigned to the undersigned on May 6, 2010. Dkt. 119.

ORDER - 1

On June 8, 2010, the United States Court of Appeals for the Ninth Circuit affirmed the equitable vacatur as to ProShipLine and reversed as to Ep-Team, individually. *ProShipline Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960 (9th Cir. 2010). Pursuant to the Ninth Circuit's order, this Court reinstated the Rule B writ of attachment as to Ep-Team. *See* Dkt. 133 (September 20, 2010, order).

On October 7, 2010, Aspen moved the Court to vacate the reinstatement of the writ. Dkt. 137. On November 1, 2010, Ep-Team opposed Aspen's motion to vacate the writ. Dkt. 139. On November 5, 2010, Aspen replied. Dkt. 141. On November 15, 2010, Ep-Team filed a surreply to the motion to vacate. Dkt. 144.[2]

Additionally, separate from, but related to, the matters before this Court, the parties have been and are currently arbitrating this matter in Singapore. Rulings from the arbitration panel bears on this case due to the terms of a contract between the parties. *See, e.g.,* Dkt. 125-1 (attachments to Declaration of Govindarajalu Asokan, Dkt. 125); *see also* Amended Complaint ¶ 8.

## II. FACTUAL BACKGROUND

This admiralty case arises out of a dispute between the parties over an alleged breach of contract. On or about April 9, 2006, Aspen and Ep-Team entered into a "Sales and Logistics Agreement" (the "Contract"). Amended Complaint ¶ 4. In its complaint, Ep-Team and ProShipLine alleged that Ep-Team formed ProShipLine and assigned the Contract (its rights and obligations) to ProShipLine. *Id*. Essentially, ProShipLine was to service the Contract with Aspen. *See, e.g., id*. ¶ 5.

---

[2]In its surreply, Ep-Team moves to strike several portions of Aspen's reply brief on the basis that it is overlength, references arguments not mentioned in the opening brief, or improperly assumes information from the Singapore arbitration panel's interim award. *See* Dkt. 144. The Court denies the motion to strike for being overlength. The Court also denies the motion to strike on the other bases because the Court finds other sufficient evidence in the record to support the order herein.

ORDER - 2

ProShipLine and Ep-Team alleged that Aspen repudiated the Contract on July 5, 2007. *Id*. ¶ 7. As a result, ProShipLine and Ep-Team commenced an action against Aspen. Eventually, the course of litigation brought the parties to Washington whereupon ProShipLine and Ep-Team obtained writs of attachment against Aspen's property under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. *See, e.g., id*. ¶ 13. On March 28, 2008, the Court ordered the writs vacated. ProShipLine and Ep-Team appealed. Dkt. 105.

The Ninth Circuit held that the equitable vacatur as to ProShipLine was proper and improper as to Ep-Team, individually. *ProShipline*, 609 F.3d 960. The Ninth Circuit ordered this Court to reinstate the writ as to Ep-Team individually, which it did (Dkt. 133). Aspen now moves this Court to vacate the reinstated writ. Dkt. 137. Aspen's motion is premised on the position that new facts exist that were not available to the Ninth Circuit on appeal or this Court prior to appeal. *See id*.

Specifically, Aspen contends that the arbitration panel's interim decision that Ep-Team had assigned its rights (not its obligations) to ProShipLine forecloses its ability to maintain the Rule B writ of attachment. *See, e.g.,* Dkt. 141 at 3. Aspen argues that, because Ep-Team assigned its rights to ProShipLine, it gave up the right to pursue the writ. *Id*.

In opposition, Ep-Team does not refute that the arbitration panel concluded that Ep-Team had assigned its rights (not obligations) under the Contract to ProShipLine in 2006. Rather, it argues that ProShipLine reassigned the rights back to Ep-Team and that Ep-Team can now maintain the 2007 writ of attachment, which the Ninth Circuit ordered reinstated. *See* Dkt. 139 at 4.

ORDER - 3

## III. DISCUSSION

### A. Assignment and Reassignment

Generally, a district court may vacate a writ of attachment if the defendant can show that, "1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436 (2d Cir. 2006). The Ninth Circuit's discussion of the Court's prior equitable vacatur in this case is helpful to framing the present dispute:

> Here, the district court held that equitable vacatur was appropriate based on its conclusion that the second situation described by the Second Circuit applied. The district court reasoned that ProShipLine and EP-Team had successfully obtained in personam jurisdiction over Aspen in the Southern District of Texas and that ProShipLine and EP-Team were both "present" in that district. Although we agree with and adopt the contours of equitable vacatur laid out by the Second Circuit, we disagree with the district court that the second situation applies to EP-Team.
> The second *Aqua Stoli Shipping* scenario describes the situation where a plaintiff, who is seeking a maritime writ in one district, is able to obtain in personam jurisdiction over the defendant in "the" district where the plaintiff is "located." Equitable vacatur is potentially warranted in such cases because the plaintiff is able to litigate against the defendant in the plaintiff's most convenient district. *See id.* at 444-45. We stress that this situation narrowly refers to "the" district where the plaintiff is located, not "a" district or "any" district where the plaintiff is located. This limited scenario allows for equitable vacatur only when the plaintiff could obtain *in personam* jurisdiction over the defendant in the federal district where the plaintiff has its most significant presence. Our understanding of the second Aqua Stoli situation is in complete agreement with the Southern District of New York, which has addressed this exact question. See Peter *Dohle Schiffahrts KG v. Sesa Goa Ltd.*, 642 F.Supp.2d 216, 224 (S.D.N.Y. 2009) (holding that the second Aqua Stoli scenario "references 'the' district where the plaintiff is located ... [a] concept closely align[ed] with the legal term 'domicile'"); see also Aqua Stoli Shipping, 460 F.3d at 445 (noting that equitable vacatur applies only in "limited circumstances").
> Under this analytic framework, the district court correctly concluded that equitable vacatur of the writ is warranted as to ProShipLine. There is no question that ProShipLine is "located" in the Southern District of Texas, the district where it has its principal place of business and most significant presence. Likewise, the record clearly indicates that ProShipLine could obtain *in personam* jurisdiction over Aspen in the Southern District of Texas because ProShipLine has repeatedly engaged Aspen in litigation in that district. Equitable vacatur of the writ as it pertains to ProShipLine was

ORDER - 4

>   thereby warranted because ProShipLine could obtain in personam jurisdiction over Aspen in the district where ProShipLine is located.
>   This analysis leads to a different result in regards to EP-Team. EP-Team is located in the Eastern District of Texas, the district where it has its most significant presence due to its principal place of business in Flower Mound, Texas.FN13 There is no indication in the record that EP-Team could obtain *in personam* jurisdiction over Aspen in that district. Based upon these two entirely undisputed facts, *the grant of equitable vacatur against EP-Team individually was an abuse of discretion because Aspen has not shown that EP-Team could obtain in personam jurisdiction over Aspen in the district where EP-Team is located.*

*ProShipline*, 609 F.3d 969 (emphasis added).

The emphasized language defines the contours in which the Ninth Circuit ordered this Court to reinstate the writ. Specifically, the order considered whether or not Ep-Team could obtain *in personam* jurisdiction over Aspen, not whether it had the right to do so under the Contract, given Ep-Team's 2006 assignment of its rights to ProShipLine. Because the propriety of the assignment remained an open question, it was not before the Ninth Circuit on appeal. *See id*. Thus, the Court is presented herein with a question regarding the rights of Ep-Team, given the assignor/assignee relationships that have persisted since at or around the inception of the Contract with Aspen.

In opposition to the motion to vacate the reinstated writ (Dkt. 133), Ep-Team maintains that while it did assign its rights to ProShipLine when it originally contracted with Aspen, ProShipLine has since reassigned its rights to Ep-Team. By virtue of this assignment and alleged reassignment of rights, Ep-Team contends it can maintain the writ of attachment as ordered to be reinstated by the Ninth Circuit. This argument is unavailing.

To begin with, Ep-Team assigned its rights to ProShipLine in 2006 after initiating the Contract with Aspen. Dkt. 125-1 at 13 ¶ 2. This assigment foreclosed its rights under the Contract, which may have included a right to maintain the writ against Aspen. *Id*. ¶ 4. Put another way, when Ep-Team assigned its rights to ProShipLine, ProShipLine became the party who, if anyone, could maintain a writ against Aspen. Therefore, Ep-Team never

ORDER - 5

had rights under the Contract from the start and it would be improper to leave the writ reinstated. *See, e.g.,* Dkt. 125-1 at 14 ¶ 4 (Singapore arbitrator(s) conclude that Ep-Team assigned its rights to ProShipLine); *see also* Amended Complaint ¶ 8 (Ep-Team alleged in the amended complaint that it had assigned its rights to ProShipLine). Nonetheless, Ep-Team argues that, while its initial assignment may have operated to foreclose maintaining the writ against Aspen, ProShipLine has since reassigned the rights back to Ep-Team. Declaration of Mark Romney (Dkt. 140) ¶¶ 3-4 (alleging that Ep-Team is seeking to amend its claims in front of the arbitration panel).

However, Ep-Team's "reassignment" argument is equally unavailing because it is logically flawed. It is basic contract law, that a party may assign only the rights which it has to assign. The Ninth Circuit held that ProShipLine did not have a right to maintain a writ against Aspen. *ProShipline*, 609 F.3d 969. It follows that ProShipLine, even if it reassigned its rights under the Contract, could not reassign the right to maintain a writ against Aspen because it had no such right. *See id.* Therefore, Ep-Team's argument fails and the order reinstating the writ (Dkt. 133) must be vacated (i.e., the reinstated writ must be vacated).[3]

Because, the record before the Ninth Circuit did not contain a finding regarding the validity of Ep-Team's assignment of rights to ProShipLine, no such fact was before the court on appeal. Therefore, the Court's order herein is not in conflict and does not tread against the Ninth Circuit's mandate to reinstate the writ.[4] *See Snow-Erlin v. U.S.*, 470

---

[3] The parties also dispute whether Ep-Team comes to the Court with unclean hands to seek an equitable remedy. This issue regards the alleged improper use (theft) of funds from the Impress account. *See, e.g.,* Dkt. 137 at 13. The Court need not resolve this underlying issue as it would not change the outcome of the Court's order herein and appears to be an issue being addressed in the parties' ongoing arbitration.

[4] This order is limited to Ep-Team's right to resurrect the writ granted in 2007, which the Court concludes it does not have for the reasons discussed herein.

ORDER - 6

F.3d 804, 808-809; *Imperial Chem. Indus., Ltd. v. Nat'l Distillers & Chem. Co.*, 459, 463 (2nd Cir. 1965) (although the district court must give full effect to the appellate court's mandate, it is "free to decide any matter left open by the . . . mandate.")

## IV.  ORDER

Therefore, it is hereby **ORDERED** that

(1)     The reinstated writ as to Ep-Team individually is vacated; and

(2)     The Court's prior order (Dkt. 133) is vacated;

DATED this 13th day of December, 2010.

 BENJAMIN H. SETTLE
 United States District Judge

ORDER - 7